WESTERN UNION TELEGRAPH CO. v. W. H. SWEETMAN.

Decided October 19, 1898.

**1. Mental Anguish, Per Se, Ground for Damages.**

·Mental anguish, whether accompanied by injury to the person or not, is a proper element of actual damages, and when caused by the negligence of a telegraph company in delivering a message, compensation therefor may be recovered by the injured party.

**2. Telegraph Company—Addressee May Sue.**

One for whose benefit a telegram is sent, who is named in the message or of whose interest therein notice is given to the company at the time, may sue upon it in case of injury from the negligence of the telegraph company.

3. Same—Notice of Relationship and Interest.

A telegraph company is bound to take notice of the purpose for which a message is sent as disclosed by the language thereof, and in cases of messages relating to serious sickness or death, it is held to know that the person for whose benefit it is sent has a serious interest in the prompt delivery of it.

4. Same—Implied, When.

A telegraph company is charged with notice of the relationship which actually exists between the person whose dying condition is announced by a telegram and the person to whom the telegram is addressed, whether such relationship is disclosd by the terms of the message or not.

5. Same—Charge Not on Weight of Evidence.

In an action against a telegraph company, it is not on the weight of evidence for the court to charge that the defendant could have discharged its liability by delivering the message at the address indicated within a reasonable time, and if this was beyond the free limits, it could have demanded further pay before it was bound to deliver there.

6. Same—Charge—"Injury to Feelings."

An instruction in an action against a telegraph company for damages for negligent delay in delivering a telegram, that the plaintiff sues "to recover damages for injury to his feelings," is not erroneous, as the term "injured feelings" would properly include both mental and bodily feelings.

7. Same—Delivery Outside Free Limits.

A telegraph company can not escape liability for delay in delivering a telegram because the point of delivery was outside of the free delivery limits and no extra compensation was paid by the sender, where it accepted the message without demanding extra compensation and attempted to deliver it.

8. Same—Same.

The sender of a telegram is not charged with notice that the place of delivery is outside the free limit delivery, and even where the company notifies him of that fact, it assumes responsibility where it changes the point of delivery to within the free limit.

9. Same—Evidence Not Admissible—Hearsay.

Evidence to the effect that time was saved by the company not holding the message until extra compensation was demanded was immaterial, and the manager could not testify as to statements made to him by the messenger boy when he returned, as that was hearsay.

APPEAL from Webb.    Tried below before Hon. A. L. McLANE.

*John A. Green, Sr.,* and *John A. Green, Jr.,* for appellant.

*E. A. Atlee* and *R. L. Randall,* for appellee.

FLY, ASSOCIATE JUSTICE.—On July 23, 1895, between 7 and 8 o'clock a. m., Joseph Sweetman, the father of appellee, delivered a message to appellant, in Hempstead, Texas, addressed to his son at the "round-house" in Laredo, Texas, as follows: "Come at once, if you can; my wife is dying," and paid the fee for the same. No demand was made at either end of the line for extra compensation for delivery of the message at a point beyond what is denominated the "free limits." No effort was made to deliver the message at the round-house, but the message was carried to the railroad depot, which was in the free delivery limits, and there delivered to a person who was not authorized to receive

it. This unauthorized person did not give the message to appellee until it was too late for him to catch the only train that left that day upon which he could reach Hempstead. The mother of appellee died on the day the message was sent, and on account of the negligence of appellant in delivering the message, appellee was prevented from attending the funeral of his mother and suffered much mental anguish thereby. By the exercise of ordinary care the message could have been delivered in time for appellee to have attended the funeral.

The first assignment of error complains of the refusal of the court to sustain a general demurrer to the petition, on the ground that the demurrer was improperly overruled, because there was no allegation in the petition that the plaintiff paid anything for transmission of the message or suffered any pecuniary loss or physical by reason of the negligence in its delivery. The proposition under the assignment of error is to the effect that "neither mental pain nor anguish, accompanied by any actual damages, will give a cause of action." The proposition is untenable, for it is the law in this State "that mental anguish, whether accompanied by injury to the person or not, is a proper element of actual damages, and when caused by the negligence of the telegraph company in failing to deliver a message, compensation therefor may be recovered by the injured party." Tel. Co. v. Coffin, 88 Texas, 94.

In the case cited the message was paid for by the sender, and this was not noticed as influencing the decision. If the liability of telegraph companies for mental anguish caused by their negligence is made to rest upon proof of who paid the fee for the message, it rests upon a very insecure foundation; and in fact would be utterly indefensible. What has been said disposes of the second assignment of error as well as first.

The third assignment is to the effect that the court erred in overruling the general demurrer, because the message set out gave no notice to the telegraph company of the relationship existing between the sick person and the plaintiff, and it is not alleged that the fact of the relationship was made known to the company when the message was filed. The Coffin case above cited is the authority presented by appellant to sustain the assignment. It not only fails to sustain it, but on the other hand holds "that the telegraph company is charged with notice of the relationship which actually exists between the parties named, whether disclosed by the terms of the message or not."

The fourth assignment of error is to the effect that the court erred in overruling the general demurrer because the telegraph company made no contract with the plaintiff and assumed no liability to pay his damages, and received no compensation from him. It is well settled in Texas "that the person for whose benefit a telegraph message is sent, and who is named in the message, or of whose interest therein notice is given to the company at the time, may sue upon it in case of injury from the negligence of the telegraph company," and "that the company receiving the message must take notice of the purposes for which the message was sent as disclosed by the language of the message, and in case of mes-

sages relating to serious sickness or death, it must be held to know that the person for whose benefit it is sent has a serious interest in the prompt delivery of it." Tel. Co. v. Coffin, above cited; Tel. Co. v. Carter, 85 Texas, 586; Tel. Co. v. Linn, 87 Texas, 7.

The fifth assignment of error, in addition to questions disposed of in the preceding assignments, attacks the proposition that mental anguish can form the basis for damages. That is not an open question in Texas, but has been settled adversely to the contention, through numerous decisions.

The charge of the court is a follows: "You are instructed that the defendant could have discharged its liabilitiy by delivering or offering to deliver the message at the round-house in Laredo within a reasonable time after its receipt by the defendant, and if the round-house was beyond the free delivery limits of defendant's office it could demand further pay to cover cost of such delivery before it was bound to leave the message there; and if you believe that the defendant undertook to find the plaintiff at some place other than the round-house, then it was required to exercise reasonable care and diligence to find plaintiff and to deliver the message to him within a reasonable time; so that if you believe that if the message had been taken to the round-house, or that if the messenger had looked for plaintiff in the yard, it would have been received by the plaintiff at an earlier hour than he did receive it, and that he could have caught the train to Hempstead; and you further believe that the plaintiff suffered any mental anguish or pain by reason of the delay in receiving the telegram, then you should find for plaintiff and allow him such a sum as you believe will be a fair and reasonable compensation for his injured feelings. If, however, you believe that the plaintiff received the telegram from the hands of Leyendecker as soon, or sooner, than he would have received it from the hands of the messenger or if it had been left at the round house; or if you believe that after plaintiff did receive it he had time to catch the 1 o'clock train for Hempstead, then you will find for the defendant."

The charge is attacked in the sixth assignment, because it informed the jury that appellant could have met its liability by a delivery or offer to deliver at the round-house in Laredo, when said round-house was out of the free delivery limits, and when appellee was not at the round-house, and because it was upon the weight of the testimony. We do not think either of the objections meritorious. The message was directed to appellee at the round-house, and the delivery or offer of delivery would, as the court stated, have released appellant from liability. Appellant has no ground for objection to this plain statement. There was no demand at the sending or receiving office for extra compensation for delivering the message outside the free limits and no notice of demand for extra compensation was noted on the envelope in which the message was inclosed, and it was distinctly stated thereon that none should be paid the messenger unless so noted. Appellant waived extra compensation by accepting and attempting to deliver the message. It can form no de-

fense when the question is sprung for the first time after the negligence has taken place and the liability attached. The charge is not on the weight of the evidence. The charge of the court is not open to the criticisms stated, and is fully supplemented by special charges presenting to the jury every phase of the case made by the evidence.

Appellee alleged in his petition that he had "suffered mental anguish and was prostrated and broken down in body and mind," and the court in his charge stated that appellee had sued "to recover damages for injury to his feelings." This is assigned as error. The term "injured feelings" would properly include both mental and bodily feeling. There is no authority to support the contention of appellant that if the place of delivery was to be outside the free delivery limits that the injured party could not recover unless the sender had paid or tendered the extra compensation whether he had any notice that the point of delivery was outside the limit or not. The sender of the message was not charged with notice that the round-house was outside the free limit, and if he had been notified, appellant voluntarily assumed the responsibility of the delivery by changing the point within the free limit. Appellant agreed with the sender to deliver the message to appellee at the round-house in Laredo for the amount charged, and when it was received by the agent in Laredo no effort was made to obtain extra compensation. In fact, the question of extra compensation did not influence its action in any manner, and has, under the facts, no possible bearing upon the question of its liability.

The evidence of the manager excluded by the court was clearly inadmissible. That to the effect that time was saved by not holding the message until extra compensation was demanded would not have tended to exonerate appellant from negligence, and the statement made by the messenger to the manager when he returned was hearsay. The messenger was on the stand, and all the material points in the excluded testimony were in evidence. There was evidence before the jury that justified the finding that the appellant was guilty of negligence in the delivery of the message, that appellee was thereby prevented from being present at the burial of his mother, and that he sustained damages in the sum found by the jury.

We fail to discover any error requiring a reversal, and the judgment is therefore affirmed.

*Affirmed.*

Writ of error refused.